UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICKOLE VINCENT, | ) | CIVIL NO. 4:20-CV-590 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| ANDREW M. SAUL, | ) | |
| Defendant | ) | |
| | ) | |

MEMORANDUM OPINION

I.     INTRODUCTION

Plaintiff Nickole Vincent, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 15). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On July 21, 2016, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 18). In this application, Plaintiff alleged she became disabled as of March 22, 2016, when she was 30 years old, due to the following conditions: hepatitis C, fibromyalgia, asthma, depression, anxiety, seizures and migraines. (Admin. Tr. 191). Plaintiff graduated from High School in 2004 and participated in the regular education program as well as cosmetology classes. (Admin. Tr. 35, 73-74, 192). She denied that she attended college or participated in vocational classes after high school. (Admin. Tr. 74). Before the onset of her impairments, Plaintiff worked as a retail stocker and cashier in Walmart. (Admin. Tr. 34).

On September 21, 2016, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 130). On November 4, 2016, Plaintiff requested an administrative hearing. (Admin. Tr. 136). On June 12, 2018, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Gerard W. Langan ("ALJ"). (Admin. Tr. 18). Vocational Expert Paul Datti testified as well. *Id*. On February 6, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. ( Admin. Tr. 15-40). On April 8, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 157). On

March 11, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1-6).

On April 7, 2020, Plaintiff initiated this action by filing a complaint. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1). As relief, Plaintiff requests that the Court enter judgement remanding the case for further proceedings. (Doc. 1, p. 4).

On September 17, 2020, the Commissioner filed an answer. (Doc. 12). In the answer, the Commissioner maintains that the decision denying Plaintiff's claim for benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 12, pp. 2-4) Along with the answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 13).

Plaintiff's Brief (Doc. 16), and the Commissioner's Brief (Doc. 17), have been filed. This matter is now ripe for decision.

## III. STANDARDS OF REVIEW

### A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198,

200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's

errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.  STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

---

[1] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on February 6, 2019.

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant,

it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.     DISCUSSION

Plaintiff raises the following arguments in her statement of errors:

STATEMENT OF THE ISSUES NO 1:

WHETHER THE ADMINISTRATIVE LAW JUDGE FAILED TO
FIND THE PLAINTIFF'S MIGRAINE HEADACHES AND
OBESITY AS SEVERE IMPAIRMENTS.

STATEMENT OF THE ISSUES NO 2:

WHETHER THE ADMINISTRATIVE LAW JUDGE GAVE
SUFFICIENT WEIGHT TO THE OPINIONS OF THE DISABILITY
DETERMINATION EVALUATOR IN DETERMINING THE
CLAIMANT'S ABILITY TO INTERACT WITH THE GENERAL
PUBLIC.

(Doc. 16, p. 3) (capitalization in original).

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his February 2019 decision, the ALJ evaluated Plaintiff's application at
steps one through five of the sequential evaluation process.  (Admin. Tr. 22-33).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful
activity since July 21, 2016, the Plaintiff's application date. (Admin. Tr. 20). At step
two, the ALJ found that, during the relevant period, Plaintiff had the following
medically determinable severe impairments: chronic Hepatitis C, asthma, seizure
disorder, degenerative disc disease of the lumbar spine, depression/bipolar disorder,
and anxiety disorder. (Admin. Tr. 21). The ALJ additionally found that Plaintiff had
the following non-severe impairments: fibromyalgia, migraines, vison impairment
and obesity. (Admin. Tr. 21-22). At step three, the ALJ found that, during the
relevant period, Plaintiff did not have an impairment or combination of impairments
that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part
404, Subpart P, Appendix 1. (Admin. Tr. 22-27).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 416.967(b). (Admin. Tr. 27). The ALJ fashioned the following RFC assessment:

> The claimant must avoid unprotected heights and machinery. The claimant can frequently climb ramps and stairs but can never climb ladders, ropes or scaffolds. The claimant can work in an environment with occasional exposure to extreme cold, humidity, wetness and environmental irritants. The claimant must avoid occupations in environments with exposure to noise level at or above level 3 (as defined by the Dictionary of Occupational Titles). The claimant must avoid work performed on or near bodies of water (such as a dockworker or lifeguard). The claimant is able to understand, remember and carry out simple tasks with few workplace changes. The claimant can occasionally make simple workplace decisions. The claimant cannot perform fast production rate paced work. The claimant should have no interaction with the public other than incidental contact. The claimant can occasionally interact with supervisors and co-workers but should not engage in any group, team, or tandem work activities.

*(*Admin. Tr. 27).

At step four, the ALJ found that, Plaintiff could not engage in any past relevant work. (Admin. Tr. 34). At step five, the ALJ found that, considering Plaintiff's age, education, and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 35-36). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: cleaner, DOT #323.687-014; garnisher, DOT #524.687-014; and bakery worker DOT #524.687-022. (Admin. Tr. 36).

B.	WHETHER THE ALJ'S STEP TWO EVALUATION OF PLAINTIFF'S MIGRAINES & OBESITY IS SUPPORTED BY SUBSTANTIAL EVIDENCE

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe; this step is essentially a threshold test. 20 C.F.R. § 416.920(a)(4)(ii); SSR 85-28, 1985 WL 56856.

An impairment, or combination of impairments, is not severe if it does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. § 416.921. Conversely, an impairment is "severe" if it *does* significantly limit a claimant's physical or mental ability to do basic work activities. The phrase, "significantly limits," however is not synonymous with "disability." Rather, the ALJ's analysis at step two is a threshold test designed to screen out *de minimis* claims.

Under the Commissioner's regulations, *all* impairments, both severe and non-severe, must be accounted for in an ALJ's RFC assessment. 20 C.F.R. § 416.945. Therefore, in cases where the ALJ found at least one impairment is found medically determinable and severe, an ALJ's unsupported conclusion that one or more other impairments are medically determinable but "non-severe" may be viewed as harmless error unless it appears that the ALJ's error influenced his or her RFC assessment. As explained in *McClease v. Comm'r of Soc. Sec.*,

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. *See Nosse v. Astrue*, No. 08-[CV-1173, 2009 WL 2986612, \*10] (W.D. Pa. Sept. 17, 2009).

No. 8-CV-1673, 2009 WL 3497775, \*10 (E.D. Pa. Oct. 28, 2009); *see also Salles v. Comm. of Soc. Sec.*, 229 F. App'x. 140, 145, n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

At step two of his decision in this case, the ALJ concluded that Plaintiff's migraine headaches and obesity were medically determinable, but non-severe. In doing so the ALJ explained:

> The claimant's migraines are not a severe, medically determinable impairment. Treatment notes generally indicate that the claimant reported daily headaches but indicated she had migraines one to two times per month. (*See e.g.,* Exhibits C3F/7, 10; C5F/5, 6). However, the claimant's symptoms were not intractable. Moreover, on other occasions, the claimant denied symptoms of headache. (*See e.g.,* Exhibit C3F/43, 47, 119; C5F/66, 69). A CT scan of the claimant's head obtained March of 2016 was unremarkable. (Exhibit C8F/14). There is no indication that the claimant maintained a headache diary to attempt to identify potential triggers or that she was referred for Botox injections or other significant treatment modalities. Overall, the record does not support a finding that this impairment caused more than minimal limitations in the claimant's ability to perform basic work activity for twelve continuous months.
>
> . . . .

The undersigned considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 02-01p. Obesity is a "severe" impairment when, alone, or in combination with another medically determinable impairment(s), it significantly limits an individual's ability to do basic work activities. However, there is no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning. Likewise, there is no evidence of record to support a finding that the claimant's obesity, either alone or in combination with other impairments had a more than minimal effect on the claimant's ability to perform work activity. Therefore, the claimant's obesity is not a severe impairment.

(Admin. Tr. 22).

1.    Whether The ALJ's Evaluation of Plaintiff's Migraines at Step Two is Supported by Substantial Evidence

Plaintiff contends that the ALJ erred at Step Two of the Five Step Sequential Evaluation in finding that her migraine headaches were non-severe. (Doc 16, pp. 3, 4-6). Specifically, Plaintiff argues:

In the previous case at Bar, the Plaintiff testified that she had migraine headaches as often as three (3) times a week that affected her ability to engage in any activities of daily living or work activities.

This clearly meets the standard of being a severe condition under the Social Security Regulations and is not required that you have intractable headaches or Botox injections as inferred by the Administrative Law judge to be entitled to have migraine headaches determined to be severe impairments.

(Doc 16, p. 6).[2] Although Plaintiff also suggests that an error in the severity assessment at step two warrants remand, Plaintiff does not explain how or if this step two error undermines the ALJ's RFC assessment. (Doc. 16, p. 5).

In response, the Commissioner argues:

> A claimant's allegations alone will never establish that she is disabled. *See* 20 C.F.R. § 416.929 (explaining how the Commissioner evaluates credibility). In addition, "[a] diagnosis [of an impairment] alone . . . does not demonstrate disability. Rather, [the claimant] [i]s required to show that his [impairment] significantly limited his physical or mental ability to do basic work activities." *Foley v. Comm'r of Social Security*, 349 F. App'x 805, 808 (3d Cir. 2009) (internal citation omitted).
>
> Here, Plaintiff has not advanced any evidence whatsoever that her migraines caused work-related functional limitations, let alone limitations that prevented her from performing the jobs identified by the VE. As the ALJ appreciated, a CT of Plaintiff's brain from March 2016 was entirely normal (Tr. 22, 747). The record further showed that Plaintiff routinely had normal neurological examinations in that she was alert and fully oriented with "fluent" speech, no focal motor or sensory deficits, normal and symmetric reflexes, and a normal gait (Tr. 552, 553, 700, 710). As the ALJ recognized, the record simply does not support Plaintiff's subjective allegations about her migraines (Tr. 22). Substantial evidence supports the ALJ's step two finding.

(Doc. 17, pp. 16-17). In the alternative, the Commissioner argues that "even if the ALJ erred in finding Plaintiff's migraines . . . non-severe, that error was entirely harmless because the ALJ did not deny benefits at step two." (Doc. 17, p. 18).

---

[2] The parties are reminded that this Court's Local Rule 83.40.4(c) provides, in the argument section of Plaintiff's brief, "[e]ach contention must be supported by specific reference to the portion of the record relied upon . . . ."

Although the argument made by Plaintiff is vague, and is not supported by any citation to the medical evidence in this case, my own review of the record compels me to agree that the ALJ's analysis at step two is not supported by substantial evidence.

First, in his rationale for discounting Plaintiff's migraines as non-severe, the ALJ noted that "the claimant's symptoms were not intractable." (Admin. Tr. 22). However, the medical record in this case includes one instance of an "intractable" migraine on March 11, 2016—approximately eleven days before her alleged onset date in this case. (Admin. Tr. 739-741).

Second, the ALJ criticized that Plaintiff did not attempt to maintain a headache diary to identify triggers. However, in Plaintiff's testimony she did identify one trigger—reading or watching computer/notebook/tablet screens. (Admin. Tr. 84). I note, however, that Plaintiff also testified that she spends most of her day "trying to watch tv." (Admin. Tr. 20). Plaintiff did not suggest that watching television triggers migraines.

Third, the ALJ rationalized his finding on the issue of severity by noting that Plaintiff was not referred for any significant modalities of treatment. However, in this case a lack of referral for "significant treatment" is not a persuasive basis to find Plaintiff's migraine headaches non-severe. Instead the relevant inquiry is whether Plaintiff's migraine headaches interfere with her ability to do basic work activities.

*See* 20 C.F.R. § 416.922(b) (defining basic work activities as "abilities and aptitudes necessary to do most jobs," and listing examples).

However, I am not persuaded that the inadequate rationale provided at step two warrants remand in this case. There no discussion in Plaintiff's testimony about Plaintiff's ability to function while she experiences a migraine headache. Objective medical records document a diagnosis of both "classic" and "common" migraines; a distinction which is not addressed in the ALJ's decision. (Admin. Tr. 353, 356, 357, 361, 365, 368, 370, 376, 380, 386, 567, 569, 534, 577, 580, 587, 700, 704, 709, 710).[3] However, it does not appear that these records contain any insight as to Plaintiff's symptoms when she has a migraine, and do not discuss Plaintiff's ability to function while she has a migraine. Plaintiff does not cite to any evidence in the record before the ALJ that addresses what impact Plaintiff's migraines had on her ability to work. Furthermore, the little information provided by Plaintiff in the record in this case, was discussed by the ALJ in his RFC assessment. The ALJ noted that Plaintiff: "does not use a computer, tablet, or smart phone, because it causes migraines, (Admin. Tr. 28); "[s]ome months she has migraines up to three times per

---

[3] The primary difference between the two is that a "common" migraine is without aura, while the "classic" migraine is with aura. *Dorland's Illustrated Medical Dictionary* 1166 (32nd ed 2012). "Classic" or migraines with aura are preceded by a "prodrome or neurologic symptoms, often visual ones." *Id.*

week," (Admin. Tr. 29); and "[s]he puts ice on her head and neck and takes over-the-counter pain relievers," *Id.*

Although it does not appear that the ALJ made any allowance in the RFC for absences due to migraine headaches, or sensitivity to smell or light, Plaintiff has not alleged she experiences any of these symptoms. When a case is appealed to the District Court, it is Plaintiff's burden to show that an error is harmful. *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). An error is considered "harmful" in this context only when, based on the evidence presented to the ALJ, "there is reason to believe that remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). In this case, Plaintiff has not met this burden. Absent any evidence in the testimony or medical records before the ALJ when he issued his decision concerning the symptoms or limiting effects of Plaintiff's migraines, there is no reason to believe that remand for consideration of symptoms and limitations that have not been alleged would result in a different outcome.

    2.  Whether the ALJ Failed to Properly Evaluate Plaintiff's Obesity

In 2002, the Commissioner issued SSR 02-1p "to provide guidance on SSA policy concerning the evaluation of obesity in disability claims filed under titles II and XVI of the Social Security Act." SSR 02-1p, 2002 WL 34686281 at *1. This ruling provides that obesity *may* affect physical and mental health in the following ways:

Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It *commonly leads to*, and *often complicates*, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. Obesity *increases the risk* of developing impairments such as type II (so-called adult onset) diabetes mellitus-even in children; gall bladder disease; hypertension; heart disease; peripheral vascular disease; dyslipidemia (abnormal levels of fatty substances in the blood); stroke; osteoarthritis; and sleep apnea. It is associated with endometrial, breast, prostate, and colon cancers, and other physical impairments. Obesity *may* also cause or contribute to mental impairments such as depression. The effects of obesity *may* be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea.

*The fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments. It means that they are at greater than average risk for developing the other impairments*.

SSR 02-1p, 2002 WL 34686281 at *3 (emphasis added).

The two leading cases in the Third Circuit that address the proper consideration of obesity in ALJ decisions are *Rutherford v. Barnhart,* 399 F. 3d 546 (3d Cir. 2005) and *Diaz v. Comm'r of Soc. Sec.,* 577 F. 3d 500 (3d Cir. 2009).

In *Rutherford*, the Third Circuit observed that the claimant "never mentioned obesity as a condition that contributed to her inability to work, even when asked by the ALJ to describe her impairments." 399 F. 3d 564, 552 (3d Cir. 2005). The ALJ did not make any finding as to obesity in his decision. *Id.* ("the ALJ found . . . at step two that she had severe impairments in her right upper extremity and lower back . .

. .”). The Court adopted the following analysis from the Seventh Circuit Court of Appeals:

> An ALJ is required to consider impairments a claimant says he has, or about which the ALJ received evidence. Although Skarbek did not explicitly claim obesity as an impairment (either in his disability application or at his hearing), the references to his weight in his medical records were likely sufficient to alert the ALJ to the impairment. Despite this, any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case. Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk. Additionally, the ALJ adopted the limitations suggested by specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.

*Rutherford,* 399 F. 3d 552-53 (quoting *Skarbek v. Barnhart,* 390 F. 3d 500, 504 (7th Cir. 2004)). This case explains that an ALJ's failure to expressly consider obesity is harmless error where: (1) the claimant did not specifically claim obesity as an impairment; *and* (2) merely speculates that weight makes it more difficult to stand and walk.

Plaintiff makes a cursory and vague argument that the ALJ erred in failing to find the Plaintiff's obesity to be a severe impairment. (Doc 16, p. 6) The argument is limited to one single sentence which states that "[i]n addition the obesity limitation was a condition that would be increasing her symptoms of fibromyalgia, back pain and her asthma, all of which would bring obesity to a severe impairment." *Id.*

In response, the Commissioner argues:

As with other impairments, it is the claimant's burden to "furnish[] evidence supporting the existence of [the] condition and the effect of that condition on the claimant's ability to work on a sustained basis." *Wimberly v. Barnhart*, 128 F. App'x 861, 863 (3d Cir. 2005) (holding that the duty to evaluate a claimant's symptoms of obesity "does not extend to guessing what the impact of those symptoms may be"). Remand is not required where the claimant did not raise obesity as a condition that contributed to her inability to work and now merely speculates that obesity limits her. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). The Third Circuit recently reiterated these points in *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020), where the court stated that it is the claimant's burden to establish the specific limitations from the claimant's obesity, not just that "obesity can impair one's ability to perform basic work activities," but by "specifying how her obesity . . . affected her ability to perform basic work activities."

Here, Plaintiff has not provided any evidence that her obesity caused any work-related limitations. Plaintiff did not allege obesity as a limiting impairment (Tr. 119-20). Nor did she mention obesity at the hearing (Tr. 63-97). Moreover, not a single medical opinion found that Plaintiff had any limitations resulting from obesity. Her argument is nothing more than speculation. *See Rutherford*, 399 F.3d at 553 (remand is not warranted where the claimant "speculates" that her weight makes it more difficult to stand and walk).

Moreover, even if the ALJ erred in finding Plaintiff's . . . obesity non-severe, that error was entirely harmless because the ALJ did not deny benefits at step two. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Salles v. Comm'r o[f] Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) (when an ALJ finds in claimant's favor at step 2 by identifying one or more severe impairments, "even if [the ALJ] had erroneously concluded that some of [the plaintiff's] other impairments were non-severe, any error would be harmless"). Thus, the Court should affirm.

(Doc. 17, pp. 17-18).

I find that the ALJ did not err in assessing Plaintiff's obesity. At step two of

the sequential analysis, the ALJ concluded that Plaintiff's obesity was medically

determinable but non-severe. (Admin. Tr. 22). As noted above, in doing so, the ALJ explained that there is no evidence in the record that Plaintiff's obesity had "any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning." *Id.* Although Plaintiff contends this conclusion is not supported by substantial evidence, she has cited no evidence to support this argument. Plaintiff also fails to cite any evidence, or articulate how the failure to find obesity severe at step two has influenced the ALJ's RFC assessment in this case.

My own review of the record reveals no evidence that discusses the functional impact of Plaintiff's obesity. Absent any evidence to support her position, I am not persuaded that remand is required for further consideration of the severity, or functional impact, of Plaintiff's obesity. *See Neff v. Astrue*, 875 F. Supp. 2d 411, 423 (D. Del. 2012) ("The Court cannot remand the ALJ's decision based on the failure to confront evidence that does not exist.").

C.  WHETHER THE ALJ PROPERLY EVALUATED OPINIONS BY DOCTORS TAREN & COLE

On February 26, 2016, psychologist Andrew Cole, Psy.D. ("Dr. Cole") examined Plaintiff at the request of the Social Security Administration. Following his examination, Dr. Cole completed a narrative report and medical source statement. (Admin. Tr. 541-544).

In his narrative report, Dr. Cole listed the following diagnoses: unspecified depressive disorder, unspecified anxiety disorder, intermittent explosive disorder, rule out social anxiety disorder, and rule out bipolar disorder. (Admin. Tr. 544).

In his medical source statement, Dr. Cole was asked to rate the degree of Plaintiff's ability based on the following scale: none; mild; moderate (more than a slight limitation, but still able to function satisfactorily); marked (substantial loss of the ability to effectively function); extreme (no useful ability to function). Dr. Cole assessed that Plaintiff had "moderate to marked" limitations in the following areas: making judgments on complex work-related decisions; interacting appropriately with the public; and interacting appropriately with co-workers. (Admin. Tr. 545-46).[4] Dr. Cole assessed that Plaintiff had "moderate" limitations in the following areas: understanding and remembering complex instructions; carrying out complex instructions; interacting appropriately with supervisors; and responding appropriately to changes in a routine work setting. *Id.*

On September 19, 2016, State Agency Psychologist Paul Taren, Ph.D. ("Dr. Taren"), completed a PRT assessment and mental RFC assessment as part of the initial review of Plaintiff's application.

---

[4] I construe Dr. Cole's response as "moderate to marked" because Dr. Cole checked both boxes and drew a line between them.

In his PRT assessment, Dr. Taren assessed that Plaintiff had an affective disorder, anxiety-related disorder, and substantive addiction disorder that did not precisely satisfy the diagnostic criteria laid out in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 122-123). He also concluded that these conditions resulted in: mild restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence or pace; and no repeated episodes of decompensation. *Id.* In support of this assessment, Dr. Taren explained:

> 30 yr old woman, worked variously as cashier, movie theater attendant, housekeeping between 2006 to 10/2011; quit last job as housekeep due to back problems; high school grad in 2004, reg ed status; possible remote hx of mh svcs, including psych admit; no mh svcs in past 5 years; family dr prescribes medication for depression and anxiety

> at psych CE, dated 2/2016, cooperative manner and adequate social comportment; well-groomed and properly attired; normal motor behavior; clear, fluent speech; adequate receptive and exp language skills; seemed nervous and avoidant eye contact; remote hx of suicidal ideation; denied current suicidality; no psychotic signs; coherent and goal-directed though processes; intact attention and concentration; intact memory

> at medical appt, dated 7/14/2016, clmt recalled hx of suicidal ideation in remote past; she reported feeling much better; gave up drug abuse; has custody of her three children; alert, oriented, no overt distress.

> clmt lives in apt and devotes time to home and child care; reports numerous adaptive skills; according to third-party reporter (i.e., clmnt's mother), clmt follows instructions well; she is socially active but tends to argue with intimates; it does not appear that the claimant was ever terminated from job for interpersonal issues; clmt is artistic

and enjoys painting crafts; during teleclaim interview with FO, no problems understanding, concentration and communication

examiner source statements, as provided by Dr. Cole in report of 9/2016, indicate moderate to marked limitations across core areas of work-related functioning; however, these determinations conflict with level of care and direct clinical observations; also conflict with claimant's reported apparent level of adaptive functioning; partial weight applied.

clmt statements regarding severity of mental impairment appear partially consistent with record.

(Admin. Tr. 123).

In his mental RFC assessment, Dr. Taren assessed that Plaintiff was moderately limited in the following areas: ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods; ability to interact appropriately with the general public; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and ability to respond appropriately to changes in the work setting. (Admin. Tr. 125-126). Plaintiff was "not significantly limited" in all other area assessed. *Id.* Dr. Taren concluded that "[t]he claimant is able to carry out simple, routine tasks despite the limitations associated with her impairment." (Admin. Tr. 126).

In his decision, the ALJ gave "partial" weight to Dr. Cole's medical source statement, and "considerable" weight to Dr. Taren's PRT assessment and conclusion that Plaintiff could "carry out simple, routine tasks." (Admin. Tr. 32). In doing so he explained that:

> . . . Paul Taren, PhD opined that the claimant is able to carry out simple, routine tasks. He opined that the claimant is moderately limited in her ability to interact with the general public and to get along with co-workers and peers without distracting them or exhibiting behavioral extremes. (Exhibit C2A/7-9). The undersigned has afforded considerable weight to Dr. Taren's opinion, as it is generally consistent with an supported by the longitudinal record. Moreover, Dr. Taren's opinion is supported by narrative explanation of the relevant objective findings.
>
> . . . .
>
> The claimant reported the following activities of daily living. The claimant dresses, bathes, and grooms herself independently. She does laundry, and manages money. (Exhibits C4F/4). She denied socializing but indicated she is interest[ed] in crafts and painting and spends her day watching television. (Exhibit C4F/4). Dr. Cole's diagnoses included unspecified depressive disorder, unspecified anxiety disorder, intermittent explosive disorder, "rule out" social anxiety disorder, and "rule out" bipolar disorder. (Exhibit C4F/5). Dr. Cole opined that although the claimant's examination was consistent with psychiatric problems, they did not "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (Exhibit C4F/5). However, in completing a Medical Source Statement, Dr. Cole opined that the claimant had moderate to marked limitations in her ability to make judgments on complex work-related decision and her ability to interact appropriate with the co-workers [sic] and the public. (Exhibit C4F/6-7). The undersigned has afforded partial weight to Dr. Cole's opinion. First, as noted, there is some internal inconsistency in Dr. Cole's opinion to the extent that he indicated that the claimant's impairments did not appear to be significant enough to interfere with daily functioning while also indicating that the claimant had some

moderate to marked limitations. Moreover, the record does not support the "marked" limitations in interacting with others. For example, the claimant is able to shop in stores for three hours at a time. (Exhibit C5E/4). She generally presented comfortable and cooperative. (Exhibits C4F/3; C5F/30, 34, 45, 53, 61, 79).

*Id.*

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Regardless of its source, the ALJ is required to consider every medical opinion received together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b).

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 416.927(c). Under some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. § 416.927(a)(2) (defining treating source); 20 C.F.R. § 416.927(c)(2) (explaining what is required for a source's opinion to be controlling).

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent

of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 416.927(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

In her brief, Plaintiff lays out a five-page general legal standard related to an ALJ's consideration of evidence generally under the heading "whether the Administrative Law Judge gave sufficient weight to the opinion of the disability determination evaluator in determining the claimant's ability to interact with the general public." Plaintiff then argues that:

The psychological records in this case were clear in that Dr. Paul Taren, the Disability Determination Evaluator, found that the Plaintiff is "moderately limited in her ability to react with the general public and to get along with coworkers and peers without distracting them or exhibiting extremes", see Exhibit C 2A, pages 7 and 9.

In addition, Dr. Andrew Cole, the evaluating Psychologist for the Social Security Administration, found that the Plaintiff's cognitive functioning was estimated to be in the borderline range and her insight and judgment were poor.

Dr. Cole specifically found moderate to marked limitations in the Plaintiff's ability to make judgments on complex work related decisions and her ability to interact appropriately with coworkers and the public. Although the Administrative Law Judge gave considerable weight to Dr. Taren's opinions, he did not give considerable weight to the opinions that indicate she would not be able to get along with the general public or coworkers and peers without distracting them or exhibiting behavioral extremes which is consistent with no contact with the public, coworkers or peers, and, in fact the Judge allowed occasional contact with coworkers and peers.

The Administrative Law judge gave only partial weight to the opinions of Dr. Cole.

As a final issue to consider, the Administrative Law Judge below found that the Plaintiff's activities of daily living do not fully support the level of impairment alleged. See page 17 of Notice of Decision – Unfavorable, Exhibit A, attached herein and made a part thereof.

The Administrative Law Judge went on to say the Plaintiff's cares for minor children, mows the lawn, cooks, does laundry, shops and goes to stores once a month for three hours, walks in the neighborhood, pay bills, etc. See page 17 Notice of Decision – Unfavorable, Exhibit A, attached herein and made a part hereof.

In fact, the Plaintiff testified that she had lost custody of her three children due to her inability to care for them and that she only cooked one or two times a month and the rest of the time she would make a

sandwich or put something in the microwave. See transcript of hearing testimony – Exhibit C8E/7.

The Plaintiff's bill paying is done with the assistance of her friend who testified at the hearing and the shopping alleged is only once per month. To interpret those activities into being inconsistent with the Plaintiff's testimony or that the Plaintiff was capable of performing light work is not supported by the competent medical or lay testimony of record in this matter. See transcript of hearing testimony – Exhibit C8E/7.

(Doc. 16, pp. 12-13).

Reading the brief as a whole, and considering the statement of error, I construe this as an argument that the ALJ's decision to credit Dr. Taren's "moderate" social limitations over Dr. Cole's "moderate to marked" social limitations based on the ALJ's characterization of Plaintiff's activities of daily living is not supported by the record. I am not persuaded by this argument.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 416.927. An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. *Id.* The weight that the ALJ gives to a medical opinion is based on a number of factors, including the length of the treatment relationship and the frequency of

examination, the nature and the extent of the treatment relationship, the extent to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, the extent to which the opinion relates to the medical source's specialty, and any other factors tending to support or contradict the opinion. *Id.* The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

In this case, the ALJ was confronted by two opinions which differed slightly. While Dr. Taren found moderate limitations in this functional area, Dr. Cole found moderate to marked limitations. (Admin. Tr. 32). Reconciling the two opinions the ALJ gave less weight to the opinion of Dr. Cole, explaining that the finding of marked impairment was inconsistent with Dr. Cole's ultimate finding that the Plaintiff's impairments did not appear to be significant enough to interfere with daily functioning. (Admin. Tr. 32-33).

As the ALJ adequately explained the reason why greater weight was given to Dr. Taren's opinion, I find no error.

Furthermore, even assuming there was an error, I am not persuaded it would change the outcome in this case. In his RFC assessment, the ALJ limited Plaintiff to work where she would have "no interaction with the public," and "occasional"

interaction with "supervisors and co-workers but should not engage in any group, team, or tandem work activities." (Admin. Tr. 27).

With respect to the "moderate" versus "moderate to marked" limitation in interacting with the general public, the ALJ's RFC assessment precludes this activity entirely. Therefore, remand for further consideration of the issue would not result in any change in the RFC assessment.

With respect to the opinions about Plaintiff's ability to interact with supervisors, both Dr. Taren and Dr. Cole agreed that these limitations were only moderate. Thus reliance on Dr. Taren's opinion, as opposed to Dr. Cole's, would not result in any change in the RFC assessment.

With respect to the "moderate" versus "moderate to marked" limitation in interacting with co-workers, the RFC assessed by the ALJ restricts Plaintiff to only "occasional" interaction (2 hours or less of interaction with co-workers per eight-hour workday). [5] The ALJ further qualified that, the "interaction" should not involve "group, team or tandem work." This limitation is not inconsistent with Dr. Cole's opinion that Plaintiff's ability to interact with co-workers was somewhere between "slightly limited and still able to function" and "seriously limited with a substantial

---

[5] The Social Security Rulings contemplate that the term "occasional" refers to an activity or condition that exists up to one-third of the time. *See* SSR 83-10 (describing occasionally as "from very little up to one-third of the time" and as approximately "2 hours of an 8-hour workday.").

loss in the ability to function." Furthermore, Plaintiff has cited no specific evidence

that suggests Plaintiff would be unable to interact with co-workers for two hours or

less per workday. In contrast, the ALJ cited evidence that Plaintiff was able to

tolerate being around people for up to three hours at a time while grocery shopping.

(Admin. Tr. 34) (citing Exhibits C5E to show that Plaintiff shops in stores once a

month for three hours at a time); (Admin. Tr. 206) (statement by Plaintiff's mother

that Plaintiff shops for food and clothing in stores when she is not in pain, and that

she spends three hours shopping for food once per month).

### D. DISCUSSION OF PLAINTIFF'S DAILY ACTIVITIES, ESPECIALLY CARING FOR HER CHILDREN.

The Plaintiff's final argument was that the ALJ improperly interpreted the

evidence regarding her activities of daily living, especially as it relates to the custody

and care for her children.

As a final issue to consider, the Administrative Law Judge below found that the Plaintiffs activities of daily living do not fully support the level of impairment alleged. See page 17 of Notice of Decision - Unfavorable, Exhibit A, attached herein and made a part hereof.

The Administrative Law Judge went on to say the Plaintiffs cares for minor children, mows the lawn, cooks, does laundry, shops and goes to stores once a month for three hours, walks in the neighborhood, pay bills, etc. See page 17 of Notice of Decision - Unfavorable, Exhibit A, attached herein and made a part hereof.

In fact, the Plaintiff testified that she had lost custody of her three children due to her inability to care for them and that she only cooked one or two times a month and the rest of the time she would make a sandwich or put something in the microwave. See transcript of hearing testimony - Exhibit CSE/7.

The Plaintiff's bill paying is done with the assistance of her friend who testified at the hearing and the shopping alleged is only once per month. To interpret those activities into being inconsistent with the Plaintiff's testimony or that the Plaintiff was capable of performing light work is not supported by the competent medical or lay testimony of record in this matter. See transcript of hearing testimony - Exhibit CSE/7.

Plaintiff's Brief, Doc. 16 at pp. 12-13.

This argument initially gave me pause so I went back and scoured the record to see if this apparent inconsistency could be resolved. I believe that it can.

Vincent testified that she has three children, all taken from her "because of my anger and getting arrested seven times for fighting." (Doc.13-2, p. 74). She does not say when they were taken. The record of previous decision (ALJ Decision dated 04/04/13) indicates her children were taken away in May of 2011 for drug use. (Doc. 13-2, p. 54). Vincent states in her undated Statement of Daily Activities for the current claim (Doc. 16-1, p. 20) that she cares for her children and that her Mother helps her. Her Mother's Disability Report – Third Party (Doc. 13-6, p. 30) dated 09/12/16 confirms that the Mother assists with children but that Vincent cares for her children daily (¶16), and does house and yard work including laundry and mowing the lawn (¶17). However, Claimant testified on June 12, 2018 that she lived alone.

During his RFC assessment the ALJ notes that "The Claimant lives alone. She has three minor children, who have been removed from her custody because of the claimant's anger management deficits and history of arrests." (Doc. 13-2, p. 29).

Later in this same section of his decision the ALJ summarizes the statements in the record from her family, friends, with this quote:

> "Furthermore, the claimant's activities of daily living do not fully support the level of impairment alleged. The claimant cares for minor children, mows the lawn, cooks, does laundry, shops in stores once a month for three hours, walks in the neighborhood, pays bills, etc."

(Doc. 13-2, p. 35)

The ALJ supports this discussion by citing to twenty-three different pages in the record of statements by claimant and her family. (Doc. 13-2, p. 35). Having reviewed those sections I find that they clearly support his quote and also his RFC finding that "… claimant's subjective complaints and alleged limitations are not fully consistent with the longitudinal record and that the claimant retains the capacity to perform work activities …" (Doc. 13-2, p. 35).

While the record in this case is not crystal clear about exactly when Vincent's children were taken from her, when precisely she cared for them, or precisely when she engaged in the other activities of daily living, it is clear that these events occurred during the relevant period and were properly considered as a part of the longitudinal record by the ALJ. His decision on this issue is supported by substantial evidence.

## V. CONCLUSION

Accordingly, because I find that the Commissioner's decision is supported by substantial evidence:

(1) The final decision of the Commissioner will be AFFIRMED.

(2) A separate order will issue.

Date: July 12, 2021                                           BY THE COURT

                                                              *s/William I. Arbuckle*
                                                              William I. Arbuckle
                                                              U.S. Magistrate Judge